# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-1402-17T3
                 A-4316-17T3

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

STEVEN A. BROWN, a/k/a
MIKE KNIGHT,

      Defendant-Appellant.

_____

Submitted December 19, 2019 – Decided February 24, 2020

Before Judges Alvarez and Nugent.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 16-10-0792 in A-1402-17, and Bergen County, Accusation No. 99-06-1217 in A-4316-17.

Joseph E. Krakora, Public Defender, attorney for appellant in A-1402-17 (Frank M. Gennaro, Designated Counsel, on the brief).

Joseph E. Krakora, Public Defender, attorney for appellant in A-4316-17 (Monique D. Moyse, Designated Counsel, on the brief).

Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent in A-1402-17 (Ali Y. Ozbek, Assistant Prosecutor, of counsel and on the brief).

Mark Musella, Bergen County Prosecutor, attorney for respondent in A-4316-17 (William P. Miller, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Charged in an October 2016, forty-five-count indictment with committing numerous sexual offenses against three minors during the course of three years, defendant pleaded guilty to four counts of second-degree sexual assault, one count of first-degree permitting a child to engage in pornography, and one count of third-degree violating a special sentence of community supervision for life ("CSL") (collectively, his "current crimes"). The trial court sentenced defendant to an aggregate twenty-five-year prison term with fifteen years of parole ineligibility. Defendant filed this appeal, No. A-1402-17 ("first appeal"), on November 22, 2017. He presents the following arguments:

> POINT I: THE TRIAL COURT IMPROPERLY DENIED DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE.
>
> POINT II: THE TRIAL COURT DENIED DEFENDANT HIS CONSTITUTIONAL RIGHT TO

2

COUNSEL BY PERMITTING DEFENDANT TO REPRESENT HIMSELF WITHOUT ENGAGING IN THE INQUIRY REQUIRED TO ESTABLISH THAT DEFENDANT HAD KNOWINGLY AND INTELLIGENTLY WAIVED HIS RIGHT TO COUNSEL (Not Raised Below).

POINT III: THE TRIAL COURT IMPROPERLY DENIED DEFENDANT'S MOTION TO SEVER COUNTS OF THE INDICTMENT.

POINT IV: THE TRIAL COURT IMPROPERLY DENIED DEFENDANT'S MOTION FOR A BILL OF PARTICULARS.

POINT V: DEFENDANT WAS ARRESTED ON A CONSTITUTIONALLY DEFECTIVE COMPLAINT WARRANT.

POINT VI: THE TRIAL COURT'S SUMMARY DENIAL OF DEFENDANT'S MOTION TO WITHDRAW HIS GUILTY PLEAS DENIED DEFENDANT HIS RIGHT TO DUE PROCESS OF LAW, AND DEFENSE COUNSEL'S STATEMENT AT THE MOTION HEARING CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL.
POINT VII: DEFENDANT'S SENTENCE IS EXCESSIVE, AND THE CONSECUTIVE SENTENCES WERE IMPOSED WITHOUT ANY STATEMENT OF REASONS BY THE TRIAL COURT.

In addition to the current crimes, defendant pleaded guilty in 1999 to an accusation charging him with sexually assaulting a minor, N.J.S.A. 2C:14-2(c)(4) ("earlier crime"). The court sentenced him to a three-year prison term

and later amended the judgment of conviction ("JOC") to include community supervision for life ("CSL").[1]  In October 2016, less than three weeks after he was indicted for his current crimes, defendant filed a petition for post-conviction relief ("PCR") from the 1999 JOC, challenging, among other things, the amendment that added CSL.  The trial court denied the petition.  On May 28, 2018—six months after he filed his first appeal—defendant filed appeal No. A-4316-17 ("second appeal") from the denial of his PCR petition.  He argues:

> POINT ONE
> MR. BROWN IS ENTITLED TO AN EVIDENTIARY HEARING ON HIS CLAIM THAT HIS ATTORNEY RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BY MISINFORMING HIM OF THE CSL CONSEQUENCE THAT HE WOULD NOT BE ABLE TO FREELY MOVE OUT OF STATE, BUT INSTEAD NEEDED PRIOR APPROVAL FROM A PAROLE OFFICER.
>
> POINT TWO
> THE IMPOSITION OF COMMUNITY SUPERVISION FOR LIFE MUST BE ELIMINATED FROM MR. BROWN'S SENTENCE AND ANY CONVICTIONS FOR VIOLATING CONDITIONS OF COMMUNITY SUPERVISION FOR LIFE MUST BE REVERSED.

---

[1]   A 2003 amendment to N.J.S.A. 2C:43-6.4 replaced all references to "community supervision for life" with "parole supervision for life" (PSL). L. 2003, c. 267, § 2 (eff. Jan. 14, 2004).

POINT THREE
THIS MATTER MUST BE REMANDED FOR FINDINGS OF FACT AND CONCLUSIONS OF LAW ON MR. BROWN'S PRO SE CLAIMS.

POINT FOUR
THE PCR COURT ERRONEOUSLY RULED THAT MR. BROWN'S PETITION WAS TIME BARRED BECAUSE ANY DELAY IN FILING THE PETITION WAS DUE TO DEFENDANT'S EXCUSABLE NEGLECT AND THERE IS A REASONABLE PROBABILITY THAT IF THE DEFENDANT'S FACTUAL ASSERTIONS WERE FOUND TO BE TRUE, ENFORCEMENT OF THE TIME BAR WOULD RESULT IN A FUNDAMENTAL INJUSTICE.

Because defendant's arguments on his second appeal overlap his arguments on the first appeal, we consolidate the appeals for purposes of this opinion. Finding no merit in any of defendant's arguments, we affirm.

I.

A.

In October 2016, a Passaic County grand jury charged defendant in a superseding forty-five count indictment with sixteen counts of second-degree sexual assault, eleven counts of second-degree endangering the welfare of a child, six counts of third-degree endangering the welfare of a child, two counts of fourth-degree endangering the welfare of a child, seven counts of fourth-degree criminal sexual contact, two counts of fourth-degree violations of

A-1402-17T3

community supervision for life, and one count of third-degree tampering with a witness. The indictment alleged defendant perpetrated the sexual assault, endangering, and sexual contact offenses against three minors.

In addition to some motions not relevant to this appeal, defendant filed four motions relevant to this appeal. They were motions to suppress evidence, for a bill of particulars, for severance, and to withdraw his plea. The court granted the severance motion in part and denied the others.

Following disposition of the motions, defendant and the State struck a plea bargain. Defendant pleaded guilty to six counts of the indictment: counts two, twenty-four, and thirty-five for the second-degree sexual assault of each victim; count eighteen for another second-degree sexual assault of one of the victims; count forty, second-degree endangering, incorrectly designated a first-degree offense on the original JOC; and count forty-three, fourth-degree violation of CSL, incorrectly designated as a third-degree offense on the original JOC. He conditioned his plea on the right to appeal all the motions the court had denied.

For the sexual assault of each victim alleged in counts two, twenty-four and thirty-five, the court sentenced defendant to two consecutive prison terms of ten years with five years of parole ineligibility, and a third consecutive term of five years with five years of parole ineligibility. For the second-degree sexual

assault charged in count eighteen, the court sentenced defendant to a concurrent prison term of ten years subject to the No Early Release Act, N.J.S.A. 2C:43-7.2 (NERA). For second-degree endangering by permitting a child to engage in pornography, charged in count forty but incorrectly designated as a first-degree offense on the original JOC, the court sentenced defendant to a concurrent ten-year prison term. Last, for violating CSL, charged in count forty-three, the court sentenced defendant to a concurrent prison term of eighteen months.

The court also sentenced defendant to PSL, ordered him to comply with the registration requirements of Megan's Law, N.J.S.A. 2C:7-2, and imposed required fines, penalties, and assessments.

The trial court amended the JOC four times to remedy omissions and errors in the first indictment. Defendant challenges none of the amendments on this appeal.

Less than three weeks after the 2016 indictment for his current crimes was filed, defendant filed his PCR petition, alleging ineffective assistance from the attorney who represented him in 1999. The trial court denied the PCR petition, and defendant filed his second appeal.

B.

The following facts appear in the records of the accusation, defendant's plea, defendant's sentence, and defendant's release from prison with respect to the earlier crime; and the record of defendant's suppression motion with respect to the current crimes. When he committed his current crimes, defendant was on CSL for his earlier crime. The current crimes came to light when parole officers supervising his CSL entered and searched his residence without a warrant. We thus begin with the earlier crime.

In 1999, defendant pleaded guilty to the earlier crime, sexually assaulting a child between the ages of thirteen and sixteen. During the plea hearing, defendant testified he had reviewed the plea forms with his attorney and voluntarily signed them. The plea forms included supplemental questions for certain sexual offenses, one of which asked if he understood "that if you are pleading guilty to . . . sexual assault . . . the Court, in addition to any other sentence, will impose a special sentence of [CSL]?" Defendant circled "yes."

Defendant testified he understood the terms of his plea agreement, including Megan's Law's registration and reporting requirements, N.J.S.A. 2C:7-2. Defendant answered "yes" when the court asked if he understood that "because of the nature of the charge . . . [the court] would have to impose a

special sentence of [CSL.]" The court further informed defendant that if he violated a condition of CSL he could be charged with a fourth-degree crime.

The court explained to defendant that he would be required to submit to a physical and psychological examination at the Adult Diagnostic and Treatment Center at Avenel (ADTC) "to determine if your conduct . . . in committing the offense is characterized by a pattern repetitive and compulsive behavior." After explaining the consequences of such a finding, the court informed defendant that "you'll be able to challenge those findings . . . in a hearing and that at the hearing you'll have the right to have your attorney question the witnesses against you and present evidence of your own on your own[.]" Defendant said he understood. The court also explained the consequences of defendant being sentenced to "Avenel."

The court sentenced defendant to a three-year prison term. During the sentencing proceeding, the court did not mention the registration requirements of Megan's Law or CSL. Although no one expressly stated defendant's ADTC evaluation did not find his conduct had been characterized by a pattern of repetitive and compulsive behavior, when she addressed the court, defense counsel said she had reviewed the ADTC report and noted defendant was "not a candidate for sentencing under the sex offender's act[.]" Defense counsel

repeated numerous times that the "Adult Diagnostic Center [has] concluded that [defendant] is eligible for probation, [and] will be a good probationary candidate with counseling." The court made no finding that defendant's conduct had been characterized by a pattern of repetitive and compulsive behavior.

The court sentenced defendant on October 29, 1999. On the same date, the court filed the JOC. There is no reference to Megan's Law or its requirements on the JOC, nor is there any reference to CSL. When the court prepared the JOC, it did not check the box next to the pre-printed line, "You are hereby sentenced to community supervision for life." The court also left blank the box next to the pre-printed line, "The court finds that your conduct was characterized by a pattern of repetitive and compulsive behavior." The JOC states defendant was sentenced as follows: "The defendant is sentenced to [three] years N.J.S.P. with a condition of no contact with the victim."

The JOC was amended twice. On December 10, 1999, two months after it was prepared and filed, the JOC was amended to include defendant's mandatory compliance with Megan's Law's requirements. This amendment is not challenged on these appeals. On August 30, 2000, ten months after it was prepared and filed, the JOC was amended again. On the second amended JOC, the box next to the pre-printed line, "You are hereby sentenced to community

10

supervision for life," is checked. Additionally, the second amended JOC states:

"The defendant is sentenced to [three] years N.J.S.P. with a condition of no contact with the victim. Pursuant to [N.J.S.A.] 2C:43-6.4, the defendant is sentenced to community supervision for life."

Defendant claims, and the State does not dispute, that he was in jail when the JOC was amended, received no notice of the court's intention to amend the JOC, and received no notice the JOC had been amended.

Defendant was released in May 2001. Before being released, he signed a document containing the conditions for CSL. The pertinent provisions are:

> A. I understand that pursuant to N.J.S.A. 2C:43-6.4 my sentence includes a special sentence of community supervision for life. I understand that during the service of the special sentence of community supervision for life I shall be under the supervision of the Division of Parole of the Department of Corrections and shall be subject to the following general conditions as established by the State Parole Board:
>
> . . . .
>
> 18. I am to permit the assigned parole officer to visit me at any time at home or elsewhere and permit confiscation of any contraband observed in plain view by the parole officer.
>
> . . . .
>
> B. I understand that if the victim(s) of an offense committed by me is a minor, I shall, in addition to the

conditions specified in A above, be subject to the following conditions:

. . . .

3. I am to refrain from residing with any minor without the prior approval of the assigned parole officer.

. . . .

E. I understand that if the sentencing court had determined that my conduct was characterized by a pattern of repetitive and compulsive behavior . . . I shall, in addition to the conditions specified in A, B, C and D above, be subject to the following conditions:

. . . .

2. I am to submit to a search conducted by the assigned parole officer, without a warrant, of my person, place of residency, vehicle or other personal property at any time the assigned parole officer has a reasonable or articulable basis to believe that the search will produce contraband or evidence that a condition [of] supervision has been violated, is being violated or is about to be violated and permit the confiscation of any contraband.

SPECIAL CONDITIONS:

. . . .

2. I am to refrain from possession or use of a computer with Internet access without the prior approval of the District Parole Supervisor. If use of a computer with Internet access is approved by the

A-1402-17T3

District Parole Supervisor, I am prohibited from accessing any sexually oriented material. I am to maintain a daily log of all addresses accessed through a computer other than for authorized employment, and make this log available to my assigned parole officer. If use of a computer with Internet access is permitted by the District Parole Supervisor, I agree to install on a computer, at my expense, one or more hardware or software systems [that] monitor computer use, if such hardware or software system is determined to be necessary by the District Parole Supervisor.

On April 30, 2012, parole officer Melissa Cantinieri visited defendant. She had received information from a confidential source that young-looking males had repeatedly entered defendant's residence. During her visit, Officer Cantinieri observed mail addressed to another person. Defendant was wearing a fencing tee shirt from a high school with the same person's name on the back. The officer also observed duffel bags with the words "Camp [Veritas]" on them, which she knew was a camp for minors. Additionally, she observed a vehicle, which defendant had not reported to any parole officer. Defendant claimed the person to whom the mail was addressed was not a minor and was not living there. Rather, the person was an old friend who needed to use the address.

The officer's further investigation revealed defendant owned the residence and the vehicle. In addition, the person who received mail at defendant's address turned out to be a student at the high school identified on the fencing tee shirt

13

defendant was wearing. The student listed defendant's house as his residence. The student's mother worked at Camp Veritas. The circumstances now known to Officer Cantinieri led her to believe defendant had committed numerous violations of his CSL conditions.

On May 2, 2012, defendant reported to the parole office. During the meeting, defendant's cellular phone rang and officers discovered his phone had internet capability. Upon learning defendant had access to the internet, the parole officers notified their supervisor, who authorized them to search defendant's house. Officer Cantinieri told defendant they were going to search his home, and in response, defendant told them the high school student was at his residence.

When the officers arrived at defendant's house, the high school student answered the door and admitted them. He said he did not live there and nothing in the house belonged to him. The officers searched the home and seized evidence, including computers, flash drives, and an HP Mini Notebook. These items were found to contain, among an abundance of other evidence, evidence defendant had accessed pornographic web sites, conversed with a victim over the internet, and engaged in sex with two victims.

14

Two victims gave statements to police. Defendant met one online. Both admitted having sexual relations with defendant. Defendant ultimately pleaded guilty to sexually assaulting these and a third victim.

## II.

## A.

We begin with the issues raised by defendant on his first appeal. In his first argument point, he contends the trial court erred by denying his suppression motion. The trial court denied the motion on two grounds: the parole officers conducted a lawful warrantless search of defendant's home based on their reasonable suspicion he had violated the terms and conditions of his parole; and the evidence they seized fell within the warrant requirement's plain view exception.

On appeal, defendant argues the trial court erred because his 1999 sentence was unlawful, and because parole officers did not have a reasonable suspicion he had violated the conditions of his parole. Concerning his first argument, which is not a model of clarity, he appears to attack only the finding in the twice-amended 1999 JOC that his conduct was characterized by repetitive and compulsive behavior, not the imposition of CSL. But the record does not

15

support defendant's claim that the trial court found repetitive and compulsive behavior.

During argument on his suppression motion, defense counsel explained:

> Judge, <u>my client knows that he's on [CSL] from an adjudication of a plea in Bergen County for second degree sexual assault</u> . . . . (emphasis added). He received a five three, then, was on parole. And was assigned a [CSL] long upon release from custody.
>
> The position my client has maintained and what we are talking about . . . is that when my client signed this form he was not found, according to [JOCs] by . . . the [j]udge that imposed the sentence, to be repetitive and compulsive. And if he was found that on the CSL PSL forms that the[y] generate to give to the defendants when they're released it, specifically, has to be enumerated so that it will give the parole authorities an ability to do a search of his residence without a warrant.
>
> . . . .
>
> So the . . . input of the motion since I've been involved is that if my client was not found to be repetitive or compulsive then, therefore, the Parole Board, the parole officers for the CSL have to, then, do normal cause of events.

On appeal, defendant again attacks the trial court's alleged finding concerning repetitive and compulsive behavior. He cites the following section of the form he signed when released from prison in 2001:

> E.  I understand that if the sentencing court had determined that my conduct was characterized by a

16

pattern of repetitive and compulsive behavior . . . I shall, in addition to the conditions specified in A, B, C and D above, be subject to the following conditions:

. . . .

2. I am to submit to a search conducted by the assigned parole officer, without a warrant, of my person, place of residency, vehicle or other personal property at any time the assigned parole officer has a reasonable or articulable basis to believe that the search will produce contraband or evidence that a condition [of] supervision has been violated, is being violated or is about to be violated and permit the confiscation of any contraband.

He argues that in May 2001, when he signed the form with the conditions of CSL, he "had no reason to believe that the provisions of paragraph E 2 . . . were applicable to him because the [JOC] he had seen did not include a finding that he was repetitive and compulsive." Made in his absence, this finding violated his constitutional right to be present at sentencing. Consequently, because he was not present for the amended sentence, "he submits that the sentence imposed in the August 30, 2000 [amended] judgment was illegal."

For several reasons, we are unpersuaded by defendant's first argument. First, it does not appear from the record that in August 2000, when the trial court amended for the second time the JOC for defendant's earlier crime, the court

either found defendant's conduct marked by a pattern of repetitive and compulsive behavior or indicated such a finding on the second amended JOC. Such a finding presumably would have been based on a report from the ADTC. Defense counsel's remarks at sentencing, with which the court apparently agreed based on the sentence, make clear no such finding was made during defendant's evaluations at the ADTC. In the absence of a medical report or opinion to support such a finding, the trial court could not make it.

Next, as we have indicated, the copy of the second amended JOC concerning the earlier crime, submitted with defendant's PCR appeal, contains no indication the trial court made a finding that defendant's conduct had been characterized by repetitive and compulsive behavior. Another copy of the same amended JOC, submitted with defendant's direct appeal, is partly illegible. This is the document defendant cites in support of his assertion the trial court made such a finding. That assertion is not fairly supported by the partially illegible copy of the relevant JOC defendant has submitted with his appeal. Consequently, we cannot conclude there is a valid basis for defendant's argument.

More important, the parole officers' search of defendant's home was both reasonable and lawful, regardless of whether the trial court found his earlier

18

crime was characterized by repetitive and compulsive behavior. Even without such a finding, the parole officers were authorized to search his home if they had a reasonable suspicion defendant violated the terms of his CSL. The Administrative Code authorizes such a search when parole officers have "a reasonable articulable suspicion to believe that evidence of a violation of a condition of parole would be found in the residence or contraband which includes any item that the parolee cannot possess under the conditions of parole is located in the residence." N.J.A.C. 10A:72-6.3[2]; State v. Maples, 346 N.J. Super. 408, 413-16 (App. Div. 2002).

"'[R]easonable suspicion' requires specific and articulable facts sufficient to justify a belief that the conditions of parole have been violated." Maples, 346 N.J. Super. at 414. Here, the parole officers had reasonable suspicion, if not probable cause. They found in defendant's residence mail addressed to a person they learned was a high school student. Their investigation disclosed the high school student listed defendant's residence as his address. When they told defendant they intended to search his home, he said the high school student was there. The parole officers had specific and articulable facts defendant was residing with a minor without prior approval of his parole officer, a violation of

---

[2] Formerly N.J.A.C. 10A:26-6.3(a).

his CSL conditions. Moreover, the officers had seen firsthand defendant had a phone with Internet access.

Defendant does not dispute the trial court's finding the parole officers seized evidence in plain view once inside his home. Rather, he contends, "[b]ut for the illegal sentence of CSL, . . . [d]efendant would not have been subject to parole supervision in 2012, thus the officers were not legally in position when they made their observations, and the plain view exception is inapplicable." Having rejected defendant's argument that his sentence was illegal, we reject this argument as well.

For completeness, and because defendant's brief is in part ambiguous, we address the trial court's amendment of the JOC to add CSL, assuming the trial court did only that and made no finding that defendant's conduct had been marked by repetitive and compulsive behavior. The amendment was not unlawful.

Defendant's 1999 sentence for his earlier crime was illegal because it did not include CSL. State v. Schubert, 212 N.J. 295, 309 (2012). "A motion may be filed and an order may be entered at any time . . . correcting a sentence not authorized by law . . . ." R. 3:21-10(b). Of course, "the 'at any time' phrase 'was not designed to authorize an enlargement of the punishment after the sentence

imposed had been satisfied and the defendant discharged.'" Id. at 309 (quoting

State v. Laird, 25 N.J. 298, 307 (1957)). Here, however, the JOC was amended

not only before defendant had completed his sentence, but before he was

released from custody. Under those circumstances, the amendment was proper.

That is not to say a defendant need not be given notice of the court's intent

to amend the JOC. Here, however, defendant was informed at his plea hearing,

when he reviewed the plea forms and when the court explained the consequences

of his plea, that he would be subject to CSL. When released from prison,

defendant knew he had been sentenced to CSL because he signed the written

forms which informed him of CSL conditions, enumerated under the heading,

"COMMUNITY SUPERVISION FOR LIFE." Thus, defendant knew in 2001,

if not before, that he had been sentenced to community supervision for life, but

did not challenge the correction for nearly fifteen years, until after he was

indicated for the current offenses. Perhaps most significantly, even had

defendant appeared in court in response to a notice the court intended to amend

the JOC to add CSL, his appearance would not have changed the outcome, as

the imposition of CSL was mandatory.

In summary, we reject defendant's argument that his suppression motion

should have been granted. His argument is premised on what appears to be a

faulty assumption, namely, the trial court violated his right to due process by finding the earlier 1999 sex offense had been characterized by repetitive and compulsive behavior without providing him an opportunity to be heard concerning such a finding. The record does not support that such a finding was made. Notwithstanding whether such a finding had been made, the JOC was properly amended to add CSL. Parole officers lawfully entered defendant's house and searched it based on a reasonable, articulable suspicion defendant had violated multiple conditions of CSL.

B.

Except for the following comments, defendant's second through fourth arguments—defendant was improperly permitted to represent himself, the trial court improperly denied defendant's motions to sever and for a bill of particulars, and he was arrested on a constitutionally defective warrant—are without sufficient merit to warrant discussion. R. 2:11-3(e)(2).

Defendant never represented himself. On October 7, 2016, defendant and his counsel appeared in court for his arraignment on the superseding indictment. Defendant informed the court he had "put in a motion that I sent to you for ineffective assistance of counsel at pretrial." Defendant asked for an evidentiary hearing. He claimed his attorney had threatened him during a visit at the county

22

jail. After admonishing defendant about his delaying tactics, the court scheduled several motions defendant had filed pro se for disposition on October 31.

The court denied defendant's motion for "ineffective assistance of counsel," which defendant has not challenged on appeal. The court did, however, permit defendant to argue his pro se motions. During the time defendant did so, his counsel was present and often supplemented defendant's arguments. The motions included one for severance and one for a bill of particulars.

The trial court determined that when defendant argued his pro se motions, his attorney was also present, and the situation was "hybrid representation." Determinations for hybrid representation are "left to the sound discretion of the trial judge which shall not be disturbed on appeal." State v. McCleary, 149 N.J. Super. 77, 80 (App. Div. 1977).

Moreover, defendant suffered no prejudice in consequence of arguing his motions partially by himself, partially with counsel. His pro se motions border on frivolity. For example, he argued the bill of particulars was needed to specify a more precise time frame for his alleged offenses so he could properly prepare a defense. However, charges of sexual abuse against minors need not be as exacting when specifying the dates of abuse. State v. Salter, 425 N.J. Super.

23

504, 514 (App. Div. 2012); State v. Davis, 6 N.J. Super. 162, 163-64 (App. Div. 1950). In addition, in this case, defendant's acts were in large part preserved on video and electronic storage devices that defendant possessed, and some of the crimes took place in his household. The video evidence of these acts was time-stamped.

Similarly, there is no merit to defendant's argument that he was unduly prejudiced by the trial court's denial of his motion to sever the crimes against the three victims. Rule 3:7-6 permits joinder of offenses in an indictment if the offenses are of the same or similar character, based on the same act or transaction, or two or more acts or transactions are connected together or are part of a common plan or scheme. As the trial court determined, a common thread ran through defendant's conduct in accessing the internet in violation of his CSL, using a fictitious name, and luring the victims to his residence where he engaged in sexual acts with them. The court did not abuse its discretion in denying defendant's severance motion.

Even if the court did abuse its discretion, which we do not find, defendant is not entitled to relief. The evidence of defendant's guilt is overwhelming. It includes video evidence, which establishes beyond any doubt defendant engaged

in the sexual crimes for which he was accused. The error was harmless. See State v. Tillery, 238 N.J. 293, 319-21 (2019).

Defendant's claim he was arrested on a constitutionally defective complaint-warrant because it contained no finding of probable cause is also without merit. N.J.S.A. 30:4-123.62(a)(1) authorizes a representative designated by the chairman of the State Parole Board to issue an arrest warrant for the parolee if his parole officer has probable cause to believe he violated a condition of parole. Here, defendant violated conditions of parole, including accessing the internet and living with a minor. The complaint-warrant recited these facts. Probable cause existed to arrest defendant. More importantly, defendant does not allege what evidence, if any, was seized after the complaint-warrant was issued or as a result of it.

## C.

Defendant challenges the denial of his motion to withdraw his guilty plea. He has two contentions. First, he contends he did not knowingly and voluntarily plead guilty, a fact the trial court overlooked by failing to analyze his plea under the criteria set forth in State v. Slater, 198 N.J. 145, 157-58 (2009). Second, he argues his counsel ineffectively represented him by making statements to the court that undermined his motion.

A-1402-17T3

Before being sentenced, defendant filed a pro se motion to withdraw his plea. He claimed the plea was made involuntarily and without understanding of the nature of the charges; defense counsel failed to advise on the substance of the charge; defense counsel misinformed the defendant as to material facts of the plea; defendant was forced to plea on certain counts; defendant was on medication while entering his plea; it would be a manifest injustice to sustain the plea; and, ultimately, defendant is innocent of the charges.

Defense counsel told the court that he knew nothing about this motion. He explained, "If you recall his plea[,] I purposely had my client initial every response . . . Mr. Brown knew fully what he was doing."

The prosecution added:

> [Mr. Brown has] been in jail, Judge, since 2013. This has been a long, long process. On the very eve of trial he was the one that begged for a guilty plea in front of Judge Caposela. It's all on the record. So[,] I want to remind him of that.
>
>  . . . .
>
> [H]e would be looking to go to trial. . . . [S]o he's looking to go back to the point in time where we were ready to pick a jury, Your Honor was ready to pick a jury with us. . . . [Defense counsel] and I were ready to pick a jury and he's the one that begged for a plea. So[,] I'm not sure if he fully understands the process that he's asking to go back to that point."

The court denied defendant's motion, explaining:

> [T]his case is rife, rife with delays and adjournment requests by the defendant. He has been consistently attempting to either go to trial and, then, when you get ready for trial he changes his mind. He wants his attorney, doesn't want his attorney, et cetera . . . .
>
> Unfortunately for this defendant I have a vivid recollection of this plea which I took great pains to make sure that it went through in an orderly fashion and voluntarily and without any force or coercion.
>
> There is no doubt in my mind that this defendant knew exactly . . . what he was pleading to.
>
> . . . .
>
> I'm not going to permit this defendant to take his plea back.

Defendant's argument that his plea was involuntary is contradicted by the extensive colloquy that occurred when plaintiff entered the plea. During the plea colloquy, defendant acknowledged that he was pleading guilty because he was guilty of the charges to which he was pleading. He provided an adequate factual basis for each charge, and he does not contend that the factual basis was inadequate. Defendant also acknowledged he had sufficient time to review the case with his attorney, his attorney answered all his questions, and he was satisfied with the attorney's representation of him.

Defendant told the court he had gone through school to college. He not only reviewed the plea form with his attorney, but read each question himself, understood it, provided the answers to each question, and then initialed his answer.

In response to a question by the court, defendant denied he was under the influence of drugs or alcohol. He did say he was taking prescription medication, which he characterized as high blood pressure pills. His attorney added that "[t]here's a tranquilizer or something like that." Defendant confirmed to the court that the medication was not affecting his ability to comprehend the plea and the questions.

Moreover, defendant did not satisfy the criteria set forth in State v. Slater, 198 N.J. 145 (2009), as relevant to such a motion:

> When evaluating a defendant's motion to withdraw a plea, a trial court must consider four factors: "(1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether the withdrawal would result in unfair prejudice to the State or unfair advantage to the accused."
>
> [Id. at 157-58 (citing United States v. Jones, 336 F.3d 245, 252 (3d Cir. 2002)).]

Defendant had no colorable claim of innocence. The trial court's determination that defendant's reason for withdrawing the plea was to further delay the case is fully supported by the evidence.

### D.

Last, defendant claims his sentence is excessive. When a trial court has followed the sentencing guidelines, and its findings of aggravating and mitigating factors are supported by the record, we will only reverse if the sentence "shock[s] the judicial conscience" in light of the particular facts of the case. State v. Roth, 95 N.J. 334, 364-65 (1984). Here, the trial court followed the sentencing guidelines and its findings of aggravating and mitigating factors are supported by the record. Moreover, defendant is a serial pedophile whose conduct was not deterred by his serving a special sentence of community supervision for life for his previous sexual assault of a minor. The sentence does not shock the conscience. Defendant's arguments to the contrary are without sufficient merit to warrant further discussion. R. 2:11-3(e)(2).

### III.

We next address defendant's appeal from the order denying his PCR petition. Generally, a first PCR petition must be filed no more than five years after the date of entry of the JOC being challenged. R. 3:22-12(a)(1). There are several

29

exceptions. For example, an exception is made in those instances when the delay is due to a defendant's excusable neglect and "there is a reasonable probability that if the defendant's factual assertions [are] found to be true enforcement of the time bar [will] result in a fundamental injustice. R. 3:22-12(a)(1)(A). Other exceptions occur when a defendant asserts a newly recognized constitutional right that is retroactive or establishes that the factual predicate for the petition could not have been discovered earlier through the exercise of reasonable diligence. R. 3:22-12(a)(2)(B).

Here, defendant argues the time bar does not apply to him because his late filing was due to excusable neglect. Specifically, he alleges he established excusable neglect because he did not realize the effects of the ineffectiveness of his plea counsel until 2015 when he, defendant, was accused of violating CSL. He argues that it was only then "he learned of the amendment to his JOC to include CSL. He emphasizes he was not present when the amendment occurred.

We reject this argument for the same reasons we rejected it in the context of defendant's argument on direct appeal, that is, the trial court erroneously denied his motion to suppress the evidence seized from his residence by parole officers. Moreover, his argument on this appeal contradicts that of his previous appeal, wherein he acknowledged that he became aware in 2001 when released from prison that he had been sentenced to a special sentence of CSL.

 A-1402-17T3

Moreover, in this appeal, defendant does not specify how his counsel was ineffective. Counsel's conclusory allegations do not establish a prima facie case of ineffective assistance entitling him to a hearing. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999).

Having determined that defendant's PCR petition is time barred, we need not address his remaining arguments.

We affirm defendant's conviction and sentence as well as the order denying his PCR petition.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1402-17T3