788 A.2d 314 (2002)
STATE of New Jersey, Plaintiff-Respondent,
v.
Lisa MAPLES, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted December 5, 2001.
Decided January 10, 2002.
*315 Peter A. Garcia, Acting Public Defender, attorney for appellant (Michael B. Jones, Assistant Deputy Public Defender, of counsel and on the brief).
John J. Farmer, Jr., Attorney General, attorney for respondent (Catherine A. Foddai, Deputy Attorney General, of counsel and on the brief).
Before Judges KING, CUFF and WECKER.
The opinion of the court was delivered by WECKER, J.A.D.
This appeal addresses the constitutionality of a parole officer's warrantless seizure of contraband from a parolee's bedroom on less than probable cause, in the course of a routine home visit pursuant to an administrative regulation that permits a search "on reasonable suspicion." We find no constitutional violation and affirm.
After her motion to suppress was denied, defendant Lisa Maples entered a guilty plea to fourth degree possession of *316 marijuana with intent to distribute. N.J.S.A. 2C:35-5a(1) and 2C:35-5b(12). Based upon her prior convictions under N.J.S.A. 2C:35-5, she was sentenced to the presumptive extended term of four years along with a mandatory eighteen-month parole ineligibility term. Appropriate fines and penalties also were imposed. Defendant's only argument on appeal is that her motion to suppress should have been granted because her parole officer did not have reasonable suspicion to justify a warrantless search.
Defendant was on parole as a result of a prior sentence on a school zone drug offense, and her parole officer made a routine home visit. While they were discussing defendant's next court appearance, a question arose as to the scheduled date of that appearance. Defendant volunteered to go into her bedroom to get the paperwork that would confirm the date. The parole officer began to follow defendant to her bedroom and noticed that defendant appeared nervous. The officer inquired about the whereabouts of defendant's sister's baby, who apparently lived in the same home. When defendant denied that the baby was in her bedroom, despite the fact that the officer could see the child there, the officer's suspicions were aroused. She then noticed a crumpled brown paper bag, open at the top. Recognizing that such a bag frequently was used as a container for drugs, and knowing defendant's history, the parole officer picked up the bag, looked inside, and saw nineteen baggies of suspected marijuana. A laboratory test confirmed that the baggies contained marijuana.
N.J.A.C. 10A:26-6.3(a) permits a parole officer to conduct a search of a parolee's residence when
1. There is a reasonable suspicion to believe that evidence of a violation of a condition of parole would be found in the residence or contraband which includes any item that the parolee cannot possess under the conditions of parole is located in the residence; and 2. The search is approved by the parole officer's supervisor or circumstances exist which require immediate action without prior approval from the supervisor.
"Reasonable suspicion" has been defined by N.J.A.C. 10A:26-1.3:
"Reasonable suspicion" means a belief that an action is necessary based upon specific and articulable facts that, taken together with rational inferences from those facts, reasonably support a conclusion such as that a condition of parole has been or is being violated by a parolee.
A parolee is required to sign a promise "to abide by specific conditions of parole... [which] shall include ... a requirement that the parolee ... [comply] with all laws and refrain from committing any crime...." N.J.S.A. 30:4-123.59b. The record does not include a copy of defendant's signed agreement to the conditions of parole. However, we infer that she would not have been released on parole had she not agreed to those conditions. There can be no dispute that possession of marijuana, like all criminal conduct, constitutes a violation of the conditions of parole.
In Griffin v. Wisconsin, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987), the Supreme Court held that probation officers' warrantless search of a probationer's home, based upon a tip from police, and pursuant to a Wisconsin administrative regulation allowing a warrantless search where "reasonable grounds" exist to believe in the presence of contraband, satisfied the Fourth Amendment. In reaching its decision, the Court compared "[a] State's operation of a probation system [to] its operation of a school, government office *317 or prison, or its supervision of a regulated industry [in that] `special needs' beyond normal law enforcement ... may justify departures from the usual warrant and probable-cause requirements." Id. at 873-74, 107 S.Ct. at 3168, 97 L.Ed.2d at 717. Such "special needs" arise out of the twin goals of rehabilitating the previously convicted individual and protecting the community to which the individual has been released. Id. at 875, 107 S.Ct. at 3169, 97 L.Ed.2d at 718.
The Court noted:
To a greater or lesser degree, it is always true of probationers (as we have said it to be true of parolees) that they do not enjoy "the absolute liberty to which every citizen is entitled, but only... conditional liberty properly dependent on observance of special [probation] restriction." Morrissey v. Brewer, 408 U.S. 471, 480, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).
....
... Supervision [of probationers], then, is a "special need" of the State permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large. That permissible degree is not unlimited, however, so we next turn to whether it has been exceeded here.

[Id. at 874-75, 107 S.Ct. at 3168, 97 L.Ed.2d at 718 (first alteration in original).]
Finally, the Griffin Court concluded that a warrant requirement would be "impracticable" and that "reasonable grounds" for suspicion was a justifiable substitute for probable cause in the context of probation. Id. at 876, 878, 107 S.Ct. at 3170, 3171, 97 L.Ed.2d at 719.
In United States v. Knights, 534 U.S. 112, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001), a unanimous Supreme Court recently followed Griffin and held that the Fourth Amendment permits police officers who have "reasonable suspicion" of a probationer's criminal behavior to conduct a warrantless search of the probationer's home pursuant to a written condition of his probation authorizing such searches. The Court applied the "totality of the circumstances" test to find the search reasonable, citing Ohio v. Robinette, 519 U.S. 33, 39, 117 S.Ct. 417, 421, 136 L.Ed.2d 347, 354 (1996).
As in the search of a probationer's quarters, a search of a parolee's home will satisfy the Fourth Amendment's reasonableness requirement if the parole agent carried out the search pursuant to a state law which itself satisfies that Fourth Amendment reasonableness requirement. E.g., United States v. Lewis, 71 F.3d 358, 361 (10th Cir.1995) (under Utah parole law).
In the context of the warrantless search of a parolee, "reasonable suspicion" requires specific and articulable facts sufficient to justify a belief that the conditions of parole have been violated. Compare United States v. Baker, 221 F.3d 438, 444 (3d Cir.2000) (parole officers did not have the required reasonable suspicion to justify warrantless search of parolee's trunk), with United States v. Hill, 967 F.2d 902, 908-09 (3d Cir.1992) ("Griffin's reasoning applies equally to the parole system," but "no specific statutory or regulatory provision [under Pennsylvania law] authorized Hill's parole agents to conduct the warrantless search of his store.").
[T]here is "no constitutional difference between probation and parole for purposes of the fourth amendment." In fact, parole may be an even more severe restriction on liberty because the parolee has already been adjudged in need of incarceration. For this reason, the *318 "special needs" of probation would appear to be heightened for parole.

[Id. (citations omitted).]
See also United States v. Payne, 181 F.3d 781, 786-87 (6th Cir.1999) (Kentucky law meets Griffin standard, but search without reasonable suspicion violated the Fourth Amendment).
As one commentator explained after Griffin:
In all ... categories of administrative search cases, the [Supreme] Court has emphasized the need to limit the field officer's discretion. Either a warrant, neutral criteria, or regulatory limits on the scope of the search must limit the officer's power and discretion.
[Sunny A.M. Koshy, Note, The Right of [All] the People to be Secure: Extending Fundamental Fourth Amendment Rights to Probationers and Parolees, 39 Hastings L.J., 449, 460 (1988) (footnotes omitted).]
"Griffin stands for the proposition that reasonableness for probationary [and, presumably also parole] searches may be established by statute, rather than by warrant." United States v. Schoenrock, 868 F.2d 289, 292 (8th Cir.1989); see also United States v. Cantley, 130 F.3d 1371, 1375 (10th Cir.1997), cert. denied, 522 U.S. 1137, 118 S.Ct. 1098, 140 L.Ed.2d 153 (1998) (warrantless search of parolee's home valid to the extent that it complied with procedure set forth in Oklahoma Probation and Parole Manual).
Perhaps the most well-known commentator on search-and-seizure law has summarized the appropriate rationale for applying the Griffin standard to warrantless searches of a parolee's home:
[T]he Fourth Amendment rights of parolees and probationers are [not] in all respects identical to those guaranteed to others. A realistic appraisal of the functions and goals of the probation and parole systems justifies the conclusion that some "special" Fourth Amendment rules are essential in this area, just as is true of certain other administrative or regulatory systems.... But these rules must strike a fair balance between the needs of the probation and parole systems and the privacy interests of those persons on parole and probation....

[Wayne R. LaFave, 4 Search and Seizure § 10.10.]
Consistent with Griffin, LaFave explains the reduced level of Fourth Amendment protection for an administrative search, as a reflection of the balance between an individual parolee's or probationer's right to be free of unreasonable search or seizure, and the government's interest in effective supervision of such persons. The parolee's or probationer's reduced expectation of privacy makes reasonable a certain degree of governmental intrusion that would be unreasonable in relation to an ordinary citizen. Id. § 10.10(c).
LaFave recognizes that Griffin does not entirely resolve the extent of the statutory or regulatory standard that justifies a warrantless search of a parolee or probationer on the basis of reasonable suspicion. New Jersey's administrative regulation, requiring that a parole officer have both "reasonable suspicion" of unlawful activity and either prior approval of a supervisor or exigent circumstances, satisfies the Griffin standard as we see it.
Both the federal and New Jersey Constitutions guarantee all citizens the right to be free of unreasonable searches and seizures. U.S. Const., amend. IV; N.J. Const., art. I, para. 7. In some circumstances, the "protection of personal privacy extends beyond that embraced by the federal constitution." State v. Mollica, 114 N.J. 329, 344, 554 A.2d 1315 (1989) (defendant's hotel telephone records are protected *319 by State Constitutional limits); e.g., State v. Cooke, 163 N.J. 657, 671, 751 A.2d 92 (2000) (exigent circumstances as well as probable cause required to justify a warrantless search under the automobile exception); State v. Hempele, 120 N.J. 182, 196, 576 A.2d 793 (1990) (State Constitution requires warrant before searching garbage left at curb, although no warrant is required to seize and hold such garbage temporarily); State v. Novembrino, 105 N.J. 95, 144-45, 519 A.2d 820 (1987) (New-Jersey Constitution does not permit good faith exception to the exclusionary rule). However, we find no reason to conclude that the New Jersey Constitution requires any greater limitation upon a parole officer's right to search, and any greater protection to a parolee, than does federal law as enunciated in Griffin v. Wisconsin and United States v. Hill.
Ms. Murphy described several conditions that together aroused her suspicions respecting the brown paper bag: defendant's nervousness as the officer approached her bedroom; defendant's lie that the baby was not in the bedroom, supporting the inference that defendant had something to hide in that room; and the crumpled brown paper bag, which Ms. Murphy knew as a common container for illegal drugs. While defendant contends that such bags are most frequently found in school lunchrooms, this bag was neither in a school lunchroom nor a kitchen.[1]
The judge had clearly applied the wrong legal standard when he said:
But there is absolutely no question in my mind that her entry intoshe was then on what would be characterized as nothing less or nothing more than a routine home visit in the course of her duties in supervising Lisa Maples at her home. It isn't really incumbent upon the State to prove that there was probable cause. It's not incumbent upon the State as far as I am concerned to prove there was reasonable suspicion. I don't think the situation, quite frankly, on a stretch is any different, really, than ISP [Intensive Supervision Program] under the circumstances. You're released from prison onto ISP, but you're told they can search you any time, do it from a phone that could be tapped, so on, so forth. (emphasis added.)
Moreover, the motion judge's findings of fact are far less complete than we might wish:
She's got the right to look, go into the house, look at it, and her actions here were absolutely reasonable under the circumstances. I want to make that finding. In addition, she says, and I believe her, that she acted nervous.
Nevertheless, we affirm or reverse judgments and orders, not reasons. Isko v. Planning Bd. of Tp. of Livingston, 51 N.J. 162, 175, 238 A.2d 457 (1968); Walker v. Briarwood Condo Ass'n, 274 N.J.Super. 422, 426, 644 A.2d 634 (App.Div.1994). We are satisfied in the end that the judge reached the correct conclusion respecting Ms. Murphy's seizure of the marijuana. While defendant testified that she did not invite Ms. Murphy into her bedroom, it was defendant herself, not Ms. Murphy, who suggested retrieving the court documents from her bedroom. We deem that suggestion, when combined with defendant's immediate walk to that room, to constitute an implied consent for Ms. Murphy to follow. Indeed, defendant does not *320 argue that Ms. Murphy's walk to the bedroom door violated her constitutional rights, but only that the officer had no right to seize and look inside the brown paper bag.
Under the totality of the circumstances presented, we are satisfied that Ms. Murphy had a reasonable suspicion that there was contraband in the plainly visible brown paper bag in defendant's bedroom, and that looking inside the bag and seizing its contents did not violate defendant's federal or state constitutional right to be free of unreasonable search or seizure.
Affirmed.
NOTES
[1] There is no reason to consider whether defendant's conduct that created Ms. Murphy's "reasonable suspicion" that there was contraband in defendant's bedroom would have permitted a more far-reaching search, e.g., inside defendant's bureau drawers, or elsewhere in defendant's home.