**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1390-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

DANIEL A. MEDINA,

     Defendant-Appellant.

_____

Submitted February 24, 2021 – Decided August 11, 2021

Before Judges Vernoia and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 14-08-2470.

Joseph E. Krakora, Public Defender, attorney for appellant (Kimmo H. Abbasi, Designated Counsel, on the brief).

Jill S. Mayer, Acting Camden County Prosecutor, attorney for respondent (Kevin J. Hein, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Daniel A. Medina appeals from an order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. Based on our review of the record, the arguments of counsel, and the applicable legal principles, we affirm in part, reverse in part, and remand for further proceedings.

I.

While serving parole following his release from prison, defendant was arrested on August 30, 2012 by New Jersey State Parole Board officers when their warrantless search of his Camden residence resulted in the seizure of heroin, a stun gun, $2,747 in cash, a digital scale, a stamp press commonly used to package controlled dangerous substances (CDS), and other drug related packaging materials. A grand jury charged defendant with various drug and weapons offenses, including first-degree maintaining or operating a CDS production facility, N.J.S.A. 2C:35-4, and fourth-degree certain persons not to possess weapons, N.J.S.A. 2C:39-7(a). In a superseding indictment, No. 14-08-2470, the grand jury further charged defendant with various offenses occurring during the weeks following his arrest, including second-degree tampering with a witness, N.J.S.A. 2C:28-5(d).[1]

_____

[1] Indictment No. 14-08-2470 superseded Indictment No. 12-12-3159. The superseding indictment included the original charges and added charges against

Pursuant to an agreement with the State, defendant pleaded guilty to first-degree maintaining or operating a CDS production facility, N.J.S.A. 2C:35-4, and second-degree tampering with a witness, N.J.S.A. 2C:28-5(d), under Indictment No. 14-08-2470, and to third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(2), under a separate indictment.[2] The court sentenced defendant in accordance with the plea agreement to an aggregate fourteen-year custodial term with a seven-year period of parole ineligibility.[3] Defendant filed a direct appeal from his conviction and sentence that we subsequently dismissed as withdrawn. State v. Medina, No. A-4628-16 (App. Div. Nov. 16, 2017).

Defendant filed a PCR petition, an amended petition, and a supporting certification claiming his trial counsel was ineffective by: failing to file a motion

---

defendant and three codefendants based on alleged events occurring between September 1, 2012 and October 31, 2012. The codefendants included the mother of defendant's children, her sister, and defendant's mother. The disposition of the charges against the codefendants is not pertinent to the issues presented by defendant on appeal.

[2] The second indictment, No. 15-11-3402, charged defendant with three counts of aggravated assault, N.J.S.A. 2C:12-1(b)(1) to (2), and one count of possession of a weapon, a broomstick, for an unlawful purpose, N.J.S.A. 2C:39-4(d). The indictment alleged defendant committed the offenses on April 9 and 10, 2015, more than thirty-one months after defendant's August 30, 2012 arrest following the search of his home.

[3] Prior to sentencing, defendant moved to withdraw his guilty plea. The court denied the motion on the day it imposed the sentence.

A-1390-19

to suppress the evidence seized during the August 30, 2012 search of his residence; permitting defendant to plead guilty without an adequate factual basis to maintaining or operating a CDS production facility; and allowing defendant to agree to forfeit the cash seized from his home on August 30, 2012 as a condition of his plea agreement.[4]

---

[4] Defendant also argued before the PCR court that his trial counsel was ineffective by failing to argue for jail credits to which he claimed he was entitled. The court rejected the claim, explaining defendant could not prove he suffered any prejudice as a result of counsel's alleged failure because defendant testified during his plea proceeding that he wanted to plead guilty pursuant to the plea agreement regardless of the disposition of his claimed entitlement to the jail credits. Defendant does not argue on appeal the court erred by rejecting the claim. See State v. Aloi, 458 N.J. Super. 234, 243 n.6 (App. Div.) ("[A]n issue not briefed on appeal is deemed waived." (citing Jefferson Loan Co. v. Session, 397 N.J. Super. 520, 525 n.4 (App. Div. 2008))), certif. denied, 239 N.J. 396 (2019).

Defendant also argued his trial counsel was ineffective by failing to move to dismiss the first-degree maintaining or operating a CDS production facility charge. We do not address the issue because defendant did not argue before the PCR court, and does not argue on appeal, that the evidence presented to the grand jury was inadequate to support the charge. See, e.g., State v. Vasky, 218 N.J. Super. 487, 491 (App. Div. 1987) (explaining "[a]n indictment that appears sufficient on its face [shall] stand[] if the State present[ed] the grand jury with at least 'some evidence' [establishing] each element of a prima facie case" for the offense charged (citation omitted)); see also State v. Robinson, 200 N.J. 1, 20 (2009) (explaining a reviewing court may decline to consider an argument that was not presented to the trial court and does not go to the court's jurisdiction or concern a matter of great public interest); Aloi, 458 N.J. Super. at 243 n.6.

A-1390-19

In its decision on defendant's PCR petition, the court relied on a parole officer's investigation report as the basis for its findings of fact supporting its rejection of defendant's claim his trial counsel was ineffective by failing to move to suppress the evidence seized during the August 30, 2012 search. The court recited the purported facts in the report to support its conclusion the Parole Board officers had a reasonable suspicion defendant violated the conditions of his parole, thus permitting the search of his residence. For example, relying on the statements contained in the report, the court found as fact that defendant stood outside his house when vehicles transporting the officers arrived at the residence, and that, "upon observing" them, "defendant ran inside his house and locked the door." Based on that finding, the court determined the officers had a reasonable suspicion defendant violated the conditions of parole due, in part, to his flight, which the court found demonstrated a consciousness of guilt.[5] The court relied on other statements contained in the report—including statements that defendant first lied about being outside when the officers arrived and defendant exhibited an irregular heart rate and irregular breathing after the

_____

[5]  The court did not make a finding as to the offense, or violation of the conditions of parole, for which defendant's purported flight demonstrated a consciousness of guilt. And the record does not include the conditions of defendant's parole.

A-1390-19

officers entered the residence—as establishing facts supporting its conclusion the officers had a reasonable suspicion defendant violated his parole conditions that permitted the search of his residence.

The court rejected defendant's claim his trial counsel was ineffective by failing to file a motion to suppress the evidence seized during the search. The court reasoned trial counsel is not ineffective by failing to make a meritless motion, see State v. O'Neal, 190 N.J. 601, 619 (2007), and a motion to suppress would have been unsuccessful because, based on the facts the court gleaned from the investigation report, the search was supported by a reasonable suspicion defendant violated the conditions of his parole.

The PCR court also rejected defendant's claim his trial counsel was ineffective by permitting him to plead guilty to the first-degree maintaining or operating charge. The court reasoned that, by pleading guilty to the charge, defendant waived any claim the State lacked sufficient evidence to support the charge. The court further found defendant's claim the CDS was for his personal use was undermined by his testimony at his plea proceeding that he maintained an operation to sell heroin. The court also determined other evidence, including the drug packaging materials, drug paraphernalia, and recorded conversations between defendant and his girlfriend, supported the maintaining or operating

6

charge. The court concluded defendant failed to establish a prima facie claim his trial counsel was ineffective, and denied the PCR petition without an evidentiary hearing. This appeal followed.

Defendant presents the following arguments for our consideration:

POINT I

THE PCR COURT ERRED IN DENYING DEFENDANT AN EVIDENTIARY HEARING DESPITE THE FACT THAT HE DEMONSTRATED A PRIMA FACIE CASE OF THE INEFFECTIVE ASSISTANCE OF COUNSEL AS DEFENSE COUNSEL'S CONDUCT WAS DEFICIENT FOR SEVERAL REASONS.

A. Defense Counsel Was Ineffective In Failing To File A Motion to Suppress The Evidence That Was Discovered By Parole and Law Enforcement Officers At Defendant's Residence On August 30, 2012.

B. Defense Counsel Was Ineffective For Permitting Defendant To Plead Guilty To Count Four of Indictment 14-08-2470 Charging First Degree Maintenance or Operating A Controlled Dangerous Substance Production Facility.

C. Defense Counsel Was Ineffective When Agreeing To Make The Forfeiture of Money Seized By Law Enforcement From Defendant's Residence on August 30, 2012 As Part of the Plea Agreement Because The Forfeiture Was Illegal As Those Funds Were Legally Earned By The Defendant From His Employment.

7

II.

In Strickland v. Washington, the Supreme Court adopted a two-pronged test for a determination of a PCR claim founded on an alleged ineffective assistance of counsel. 466 U.S. 668, 687 (1984). First, a petitioner must show counsel's performance "fell below an objective standard of reasonableness" and "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687-88. Second, a "defendant must show that the deficient performance prejudiced the defense." Id. at 687. There must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

To satisfy the second prong of the Strickland standard where a defendant seeks to set aside a conviction based on a guilty plea, he or she must also "convince the court that a decision to reject the plea bargain" and "insist on going to trial" "would have been rational under the circumstances." State v. Maldon, 422 N.J. Super. 475, 486 (App. Div. 2011) (quoting Padilla v. Kentucky, 559 U.S. 356, 372 (2010)); see also State v. Nuñez-Valdéz, 200 N.J. 129, 139 (2009).

A-1390-19

We review the legal conclusions of a PCR court de novo. State v. Harris, 181 N.J. 391, 419 (2004). The de novo standard of review also applies to mixed questions of fact and law. Id. at 420. Where, as here, an evidentiary hearing has not been held, it is within our authority "to conduct a de novo review of both the factual findings and legal conclusions of the PCR court." Id. at 421. We apply these standards here.

## A.

Defendant contends his counsel was ineffective by failing to file a motion to suppress evidence seized from his residence. Defendant contends he made a prima facie showing that if a motion to suppress had been filed, the evidence seized from his residence would have been suppressed, and therefore the State would have been unable to prove the CDS and weapons offenses in Indictment No. 14-08-2470. See Wong Sun v. United States, 371 U.S. 471, 485 (1963) (explaining where an officer obtains "physical, tangible materials . . . during or as a direct result of an unlawful invasion," the exclusionary rule applies and bars such materials from trial); State v. Shaw, 213 N.J. 398, 412-13 (2012) (same). As noted, the PCR court rejected defendant's claim his counsel was ineffective by failing to file a suppression motion based on its finding defendant failed to make a prima facie showing a suppression motion would have been meritorious.

 A-1390-19

The Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution guarantee "[t]he right of the people to be secure . . . against unreasonable searches and seizures." U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7. "Because warrantless . . . searches are presumptively invalid, the State bears the burden of establishing that any such . . . search is justified by one of the '"well-delineated exceptions" to the warrant requirement.'" Shaw, 213 N.J. at 409 (quoting State v. Frankel, 179 N.J. 586, 598 (2004)). The State must prove the validity of a warrantless search by a preponderance of the evidence. Ibid. Where an officer obtains "physical, tangible materials . . . during or as a direct result of an unlawful invasion," the exclusionary rule applies and will bar such materials from trial. Wong Sun, 371 U.S. at 485; see also Shaw, 213 N.J. at 412-13.

A counsel's "failure to file a suppression motion does not constitute per se ineffective assistance of counsel." State v. Fisher, 156 N.J. 494, 501 (1998) (quoting Kimmelman v. Morrison, 477 U.S. 365, 384 (1986)). Citing to the United States Supreme Court's decision in Kimmelman, our Supreme Court has explained that "when counsel fails to file a suppression motion, the defendant not only must satisfy both parts of the Strickland test[,] but [he or she] also must prove that his [or her] Fourth Amendment claim is meritorious." Ibid. (citing

10

Kimmelman, 477 U.S. at 375); see also State v. Johnson, 365 N.J. Super. 27, 35 (App. Div. 2003); State v. Roper, 362 N.J. Super. 248, 255 (App. Div. 2003).

In neither Kimmelman nor Fisher is the term "meritorious" defined. It has been observed that "it is not entirely clear what 'meritorious' means in this context," and "there is some uncertainty under federal law as to precisely what showing is required to satisfy Strickland's prejudice prong where the ineffective assistance of counsel claim is premised on a failure to make a suppression motion." Maldonado v. Burge, 697 F. Supp. 2d 516, 528 (S.D.N.Y. 2010). After surveying various cases addressing the issue, the United States District Court in Maldonado found "[t]he weight of the authority and the logic of Kimmelman suggest that [a] petitioner must show, at minimum, a reasonable probability that the suppression motion would succeed, and quite possibly that . . . the suppression motion would in fact succeed." Ibid.

In Johnson, we recognized that a defendant claiming ineffective assistance of counsel based on a failure to file a suppression motion must "prove that his [or her] Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence . . . to demonstrate actual prejudice" under Strickland's second prong. 365 N.J. Super. at 35 (quoting Kimmelman, 477 U.S. at 375). We addressed the

"merits" of the defendant's claim, concluding the defendant demonstrated the unfiled motion to suppress evidence was "meritorious" under the Kimmelman standard because: the homeowner who gave consent to search the residence where the evidence was seized "may not have been advised of his right to refuse consent," ibid. (emphasis added); the "permission" given to search "appear[ed] limited," and the police "seemingly far exceeded the scope of the 'invitation,'" id. at 36 (emphasis added); and the search "appear[ed] not only to have been unauthorized by the homeowner, but [also] well beyond the limited 'grabbable' area surrounding and within the 'immediate reach' of [the defendant] as otherwise incidental to his arrest," ibid. (emphasis added).

Our determination the defendant in Johnson made a prima facie showing the unfiled suppression motion was meritorious under the Kimmelman standard was based on what defendant demonstrated may have, or appeared to have, happened. We concluded, however, that determination did not constitute a finding that the "motion to suppress, if properly made, would ultimately have been successful." Id. at 37. In other words, we determined the defendant made a prima facie showing a motion to suppress was meritorious under the Kimmelman standard even in the absence of a demonstration the motion would be successful. We interpret Johnson to hold that a PCR petitioner claiming trial

counsel was ineffective by failing to make a motion to suppress makes a prima

facie showing the motion is meritorious by demonstrating there is a reasonable

probability the motion would have been successful.[6]  See, e.g., Maldonado, 697

_____

[6] In Roper, we stated that for "an ineffective assistance [of counsel] claim based on failure to file a suppression motion, the prejudice prong [of the Strickland standard] requires a showing that the motion would have been successful," and, somewhat incongruously, we also found that in assessing whether a petitioner demonstrated a motion to suppress satisfied the prejudice prong, "the court may decide first if the motion ha[s] any merit."  362 N.J. Super. at 255 (emphasis added).  In support of the former proposition, we cited Fisher, but, in that case, our Supreme Court stated only that a PCR petitioner claiming ineffective assistance of counsel based on a failure to file a suppression motion must satisfy both prongs of the Strickland standard and "also must prove that his [or her] Fourth Amendment claim is meritorious."  Fisher, 156 N.J. at 501.  As noted, the Court in Fisher did not define the term meritorious, and, contrary to our statement in Roper, the Supreme Court did not hold that a petitioner must demonstrate a suppression motion will succeed to make a prima facie showing the motion is meritorious.  To the contrary, the Court in Fisher remanded the matter to the PCR court to conduct a hearing to determine if trial counsel failed to file a suppression motion based on an erroneous assumption the motion could not be filed after defendant was no longer a fugitive, and, if the court found the failure to file the motion to suppress was based on the error, to determine if the defendant was prejudiced by the error by determining if the motion would have been granted if filed.  Id. at 506-08.  Thus, the Court in Fisher did not require a petitioner to demonstrate the unfiled motion to suppress would have been successful on the merits to establish a prima facie ineffective assistance of counsel claim based on the failure to file the suppression motion in the trial court.  In any event, for those reasons, we do not rely on our decision in Roper as requiring a petitioner claiming ineffective assistance of counsel based on a failure to file a motion to suppress to establish the motion would have been successful.  Instead, as we have explained, a defendant satisfies his or her burden of establishing a prima facie case an unfiled motion to suppress is meritorious by demonstrating there is a reasonable probability that the motion would have been successful.

F. Supp. 2d at 528. This is in accord with the prejudice prong of the Strickland standard, which requires that a defendant demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694; see, e.g., Thomas v. Varner, 428 F.3d 491, 502 (3d Cir. 2005) (explaining the prejudice prong of the Strickland standard is satisfied on a claim counsel failed to file a suppression motion by showing the defendant "would likely have prevailed on the . . . motion and that, having prevailed, there is a reasonable likelihood that he [or she] would not have been convicted").

Based on the limited competent evidence presented to the PCR court, we are convinced defendant made a prima facie showing there is a reasonable probability a motion to suppress the evidence seized from his residence would have been successful. In our assessment of the record, we consider, as we must, the facts in the light most favorable to defendant. See State v. Preciose, 129 N.J. 451, 462-63 (1992) (explaining a PCR court must "view the facts in the light most favorable to a defendant to determine whether a defendant has established a prima facie [ineffective assistance of counsel] claim").

Defendant's PCR claim is founded on the averments of fact set forth in his verified petition, amended verified petition, and certification in support of his

petition. See State v. Jones, 219 N.J. 298, 312 (2014) (explaining PCR petitions must be "accompanied by an affidavit or certification by defendant, or by others, setting forth with particularity the facts" supporting the defendant's claim). Prior to detailing defendant's averments of fact, we note the record before the PCR court is bereft of any certification, affidavit, or other competent evidence from the State establishing facts contrary to those asserted in defendant's sworn verified petitions and certification. See R. 1:6-6. Instead, the State relied on Parole Officer Cheryl Annese's three-page August 31, 2012 "Investigation Report" to establish the purported facts concerning the search of defendant's residence and the seizure of evidence. Those purported facts are untethered to any competent admissible evidence. Ibid. In a different context, we have observed that "[f]acts intended to be relied on which do not already appear of record and which are not judicially noticeable are required to be submitted to the [trier of fact] by way of affidavit or testimony." Celino v. Gen. Accident Ins., 211 N.J. Super. 538, 544 (App. Div. 1986) (first citing R. 1:6-6; and then citing R. 4:46-2). That requirement is not a mere formality, it "go[es] to the heart of procedural due process." Ibid.

On appeal, the State again relies on the report as the basis for its version of the facts supporting the August 30, 2012 search of the residence that yielded

the evidence supporting the CDS and weapons offenses, including the first-degree maintaining or operating charge, in Indictment No. 14-08-2470. The State's reliance on the report is misplaced, however, because it does not constitute competent evidence establishing facts supporting its version of the events leading to the search of defendant's residence. See R. 1:6-6; Celino, 211 N.J. Super. at 544. We therefore summarize the pertinent facts established by the only competent evidence concerning the search submitted to the PCR court: defendant's certification in support of his PCR petition.[7]

In his certification, defendant asserted that in August 2012, he was on parole as a condition of his sentence for a second-degree robbery conviction. He lived at the Camden residence with his girlfriend and their child, and his mother.

Defendant further averred that on August 30, 2012, he stood outside of the home smoking a cigarette, and, when he finished, he "went back inside and washed [his] hands." He "heard a knock at the front door and went to see who was there." He saw a parole officer, Annese, at the door, and "opened [it] to let her inside." According to defendant, he had not seen Annese "in months," and

---

[7] We rely on defendant's certification because it provides defendant's version of the events surrounding the search of his residence. Defendant's verified petition and amended verified petition do not aver any facts concerning the search.

"wonder[ed]" why she was there because, at that time, his parole officer was "Officer Scolla."[8]

Defendant also asserted he was "very surprised" when Annese and "several state police officers" entered his residence and "beg[a]n looking around." Defendant stated Annese's request to the Sheriff's Department for a K-9 unit was denied, and she called New Jersey State Parole Board Sergeant Dickerson. As stated by defendant, "The various members of law enforcement proceeded to search the entire home. They did not say what it was they were looking for with their search."

Defendant claimed the "narcotics" found in the home were his and he possessed them for his own use. He also asserted he earned the $2,747 found in the residence working at his job. Defendant stated that after he was arrested and transported to the parole office, Annese said he appeared "sleepy," and he told her he had used narcotics.

Defendant's version of the events, which we accept as true for the purpose of determining whether he demonstrated a prima facie ineffective assistance of counsel claim, Preciose, 129 N.J. at 462-63, establishes there is a reasonable probability that a motion to suppress evidence would have been successful. In

---

[8] Officer Scolla's first name is not included in the record.

A-1390-19

the first instance, the search of defendant's residence is presumptively invalid because it took place in the absence of a search warrant. See Shaw, 213 N.J. at 409.

There is an exception to the warrant requirement for a parolee's residence where "the parole agent carrie[s] out the search pursuant to a state law which itself satisfies th[e] Fourth Amendment reasonableness requirement." State v. Maples, 346 N.J. Super. 408, 413-14 (App. Div. 2002). This exception to the warrant requirement is founded on parolees' "reduced expectation of privacy." Id. at 415. Parolees—and probationers—"enjoy . . . 'only . . . conditional liberty properly dependent on observance of special . . . restrictions.'" Griffin v. Wisconsin, 483 U.S. 868, 874 (1987) (second alteration in original) (quoting Morrissey v. Brewer, 408 U.S. 471, 480 (1972)). Thus, a parolee's status "makes reasonable a certain degree of governmental intrusion that would be unreasonable in relation to an ordinary citizen." Maples, 346 N.J. Super. at 415.

The New Jersey Administrative Code establishes the conditions precedent to a search of a parolee's residence. See ibid. (explaining the regulations, N.J.A.C. 10A:26-6.3(a) and N.J.A.C. 10A:26-1.3, defining the conditions for a search of a parolee's residence satisfy the constitutional requirements for a

18

warrantless search of a parolee's residence established by the United States Supreme Court in <u>Griffin</u>).[9]  The Code provides:

> A parole officer may conduct a search of a parolee's residence when:
>
> (1) There is a reasonable articulable suspicion to believe that evidence of a violation of a condition of parole would be found in the residence or contraband which includes any item that the parolee cannot possess

---

[9] In <u>Maples</u>, we considered N.J.A.C. 10A:26-6.3(a), which, at that time, defined the conditions permitting a parole officer's search of a parolee's residence.  346 N.J. Super. at 412.  In 2002, N.J.A.C. 10A:26-6.3(a) was recodified in Chapter 72 of Title 10A of the Administrative Code, 34 N.J.R. 1918(a) (June 3, 2002), with the transfer of the Bureau of Parole from the New Jersey Department of Corrections to the State Parole Board as the Division of Parole.  The recodification became effective December 6, 2004.  36 N.J.R. 5359(a) (Dec. 6, 2004).  Subparagraph (a)(1) in N.J.A.C. 10:26-6.3 and in its recodified version at N.J.A.C. 10A:72-6.3(a) are identical in all respects, other than the original regulation required a "reasonable suspicion" a parolee's residence contains evidence of a violation of the conditions of parole and the recodified version requires a "reasonable articulable suspicion" such evidence is present.  Subparagraph (a)(2) of the original and recodified versions both condition a parole officer's search of a parolee's residence on the approval of the parole officer's supervisor or the existence of circumstances requiring immediate action without prior approval from the supervisor.  The original and recodified versions of subparagraph (a)(2) differ only in their identification of the supervisor from whom approval must be obtained.  <u>Compare</u> N.J.A.C. 10A:26-6.3(a) (requiring approval from "the parole officer's supervisor"), <u>with</u> N.J.A.C. 10A:72-6.3(a)(2) (requiring approval from "[a]n Assistant District Parole Supervisor or a higher level supervisor").  In addition, the definition of "reasonable suspicion" in N.J.A.C. 10A:26-1.3 is identical to the definition of the term in the recodified regulation in N.J.A.C. 10A:72-1.1.  For purposes of our analysis, the recodification of the regulation does not affect the validity of our holding in <u>Maples</u>.

under the conditions of parole is located in the residence; and

(2) An Assistant District Parole Supervisor or a higher level supervisor provides prior approval for the search or circumstances exist which require immediate action without prior approval from a supervisor.

[N.J.A.C. 10A:72-6.3(a); see also Maples, 346 N.J. Super. at 412.]

The Code further defines "reasonable suspicion." N.J.A.C. 10A:72-1.1 provides that "'[r]easonable suspicion' means a belief that an action is necessary based upon specific and articulable facts that, taken together with rational inferences from those facts, reasonably support a conclusion such as that a condition of parole has been or is being violated by a parolee."

Measured against these requirements for a warrantless search of a parolee's residence, we are convinced defendant's version of the circumstances surrounding the search of his residence makes a prima facie showing there is a reasonable probability a motion to suppress would have been successful. As explained by defendant, immediately after he let Annese enter his home, she and the other officers began searching the residence. There are no facts in the verified petitions or defendant's certification supporting a finding that the warrantless search of the residence was based on a reasonable suspicion permitting a search under N.J.A.C. 10A:72-6.3(a)(1), the officers obtained the

requisite approval of a supervisor as required by N.J.A.C. 10A:72-6.3(a)(2), or that there were circumstances requiring immediate action without prior approval from the officers' supervisor. To the contrary, based on his verified version of the facts, defendant simply stepped inside of his residence after smoking a cigarette, and his home was searched by numerous officers after he did nothing more than open the front door to let Annese and the officers in. Those circumstances do not support or permit the warrantless search of defendant's residence.

As noted, defendant's version of the events, as set forth in his certification, is uncontradicted by competent evidence. That is, the State did not provide the PCR court with any competent evidence setting forth a version of the facts pertinent to the search of defendant's residence, contradicting the facts in defendant's certification, or demonstrating the legality of the search under N.J.A.C. 10A:72-6.3(a). Thus, the PCR court was without any competent evidence supporting the State's version of the circumstances resulting in the warrantless search of the residence. Instead, the State relied solely on Annese's hearsay investigation report to support its version of the pertinent events.

In denying defendant's PCR petition, the court found defendant could not satisfy his burden of demonstrating that a suppression motion would have been

meritorious based solely on a determination the facts set forth in the investigation report established the warrantless search of defendant's residence was proper. It was error for the court to rely on the report because it constituted inadmissible hearsay, and it did not, and could not, properly support the court's findings of fact upon which it based its determination defendant did not demonstrate a motion would have been meritorious.[10] See R. 1:6-6.

In our de novo review of the PCR record, the only competent evidence pertinent to whether defendant made a prima facie showing a motion to suppress would have been meritorious is defendant's certification. The uncontroverted

---

[10]  We recognize that Rule 3:5-7(b), which governs the filing of motions to suppress evidence, permits the State to set forth the facts supporting its opposition to a motion to suppress a warrantless search in its brief filed with the motion court, and the defendant is permitted to set forth his or her version of the facts in a brief filed in response. See State v. Torres, 154 N.J. Super. 169, 172-73 (App. Div. 1977) (holding Rule 3:5-7(b) does not require that the facts pertaining to a disputed motion to suppress be established by affidavit pursuant to Rule 1:6-6 for the purpose of the court's determination whether there are facts in dispute requiring an evidentiary hearing). Rule 3:5-7(b), however, does not apply to petitions for PCR. Rule 3:22-8, which prescribes the requirements for filing a PCR claim, requires the submission of a "verified" petition setting forth "with specificity the facts upon which the claim for relief is based." Thus, defendant was required to support his factual allegations with an affidavit or certification in accordance with Rule 1:6-6. See Jones, 219 N.J. at 312. There is no rule permitting the State to refute the facts set forth in a defendant's verified PCR petition or supporting certification with opposition set forth solely in a brief. As a result, to the extent the State relies on facts in its opposition to a PCR petition or supporting certification, due process requires that those facts be supported by competent evidence. See generally Celino, 211 N.J. Super. at 544.

facts set forth in the certification establish no grounds supporting a warrantless search or satisfying the requirements of N.J.A.C. 10A:72-6.3(a). We therefore conclude defendant made a prima facie showing there is a reasonable probability a motion to suppress would have been successful.

Defendant's certification similarly makes a prima facie showing that, but for counsel's alleged error in failing to file the motion to suppress, there is a reasonable probability that the result of the matter would have been different. If the motion had been filed and was successful, the CDS and weapons charges in Indictment No. 14-08-2470 would have necessarily been dismissed, including the first-degree maintaining or operating charge which, based on defendant's circumstances, carried the prospect of an extended term life sentence. See N.J.S.A. 2C:44-3(a). Dismissal of those charges following a successful motion to suppress would have inexorably altered the circumstances presented in the negotiation of defendant's plea agreement and affected defendant's decision whether to proceed to trial. Indeed, it would have been irrational for defendant to enter into the plea agreement that resulted in his conviction—by pleading guilty to the first-degree offense of maintaining or operating a drug production facility—if the motion to suppress the CDS, weapon, and drug paraphernalia seized from his residence had been filed and granted. As such, defendant's

certification sufficiently demonstrated that, but for his counsel's alleged error in failing to file the motion, he would not have pleaded guilty to the charges for which he was convicted and, instead, he would have proceeded to trial. See Johnson, 365 N.J. Super. at 36 (noting "the critical significance of the evidence to [the] successful prosecution" of the defendant permitted a finding that the "defendant suffered prejudice from his attorney's failure to make a timely suppression motion").

We do not determine that a motion to suppress would have been successful, and we recognize there are many reasons trial counsel may have decided not to file the motion. See id. at 37 (explaining a finding that a defendant made a prima facie showing his trial counsel was ineffective by failing to file a meritorious suppression motion does not constitute a finding the motion to suppress would have been successful). For example, defendant and his counsel may have made a well-reasoned decision not to file a motion to suppress to take advantage of a plea offer that might have been withdrawn if a motion to suppress had been filed and lost.[11] We decide only that defendant made a prima

_____

[11] At defendant's plea proceeding, his counsel erroneously stated the search of defendant's residence was conducted pursuant to a search warrant. Thus, one possibility, among many others, is that trial counsel did not file a suppression motion because he mistakenly believed the search was supported by a search

facie showing of ineffective assistance of counsel under the Strickland standard based on counsel's failure to file the motion, and we remand for the court to conduct an evidentiary hearing to consider the reasons counsel did not file a suppression motion, and to determine whether "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. "[I]f counsel acted for sound strategic reasons, [his] performance may not have been deficient." Fisher, 156 N.J. at 507. In that event, the court need not address the merits of the suppression motion to assess whether defendant was prejudiced by his counsel's purported error because defendant will have failed to establish his counsel's performance was deficient under Strickland's first prong. See Strickland, 466 U.S. at 700 (finding a failure to establish either prong of the Strickland standard requires denial of a PCR petition); State v. Nash, 212 N.J. 518, 542 (2013) (same).

If the court determines trial counsel's performance was deficient by failing to file the suppression motion, the court must also consider at the evidentiary

_____

warrant. We make no findings concerning any of the possible reasons for the decision not to file a suppression motion. We mention there are many possibilities only to highlight that the actual reason the motion was not filed must be developed to determine, as a matter of fact and law, whether trial counsel's performance was deficient as required under Strickland's first prong.

A-1390-19

hearing the merits of the suppression motion to determine if, but for counsel's error in failing to file the motion, there is a reasonable probability the result of the proceeding against defendant would have been different.[12] See Strickland, 466 U.S. at 694. Of course, if the court determines at the hearing that trial counsel's performance was deficient and the evidence would have been suppressed, the court shall grant defendant's petition and vacate his convictions on the offenses to which he pleaded guilty pursuant to the plea agreement. If the court finds either counsel's performance was not deficient or that defendant suffered no prejudice from the purported error in failing to file the motion to suppress, the court shall deny the PCR petition.

We express no view on the merits of defendant's claim. That determination shall be made by the remand court based on the record presented at the hearing. We determine only that defendant's certification in support of

---

[12] The remand court may properly first consider the merits of the suppression motion at the evidentiary hearing to determine if defendant suffered prejudice based on counsel's failure to file the suppression motion. "Although a demonstration of prejudice constitutes the second part of the Strickland analysis, courts are permitted leeway to choose to examine first whether a defendant has been prejudiced, and if not, to dismiss the claim without determining whether counsel's performance was constitutionally deficient." State v. Gaitan, 209 N.J. 339, 350 (2012) (citation omitted); see also Roper, 362 N.J. Super. at 255 (explaining that in assessing whether counsel was ineffective by failing to file a suppression motion, the court "may decide first if the motion had any merit[, and] if not, the inquiry is over").

his petition sufficiently established a prima facie ineffective assistance of counsel claim warranting an evidentiary hearing. We therefore reverse the court's order denying defendant's PCR claim his counsel was ineffective for failing to file a suppression motion and remand for the court to conduct an evidentiary hearing on the claim.

B.

Defendant also contends the court erred by rejecting the claim that his counsel was ineffective by permitting him to plead guilty to the first-degree maintaining or operating a CDS production facility, N.J.S.A. 2C:35-4. Defendant argues his counsel's performance was deficient because "there was simply insufficient evidence to sustain [the] charge." More particularly, defendant contends the record lacks evidence "of continuity" in his use of a facility to manufacture CDS, or evidence he "intended to operate the manufacturing facility on more than one occasion," as required to establish he committed the offense under N.J.S.A. 2C:35-4. State v. Kittrell, 145 N.J. 112, 122 (1996).

We reject defendant's argument because it is founded on nothing more than a conclusory assertion the State's evidence does not support the charge. Defendant does not identify or supply the State's evidence that was provided in

27

discovery, and defendant's verified PCR petitions and certification do not detail what the State's evidence showed or did not show concerning what defendant testified at his plea hearing was his maintenance of a CDS production facility.[13] Defendant does not assert he reviewed all of the discovery materials that were provided to him, and he therefore fails to establish he is even familiar with the State's evidence supporting the charge. Moreover, defendant did not move to dismiss either the original or superseding indictments, both of which included the first-degree charge, and he neither argues the evidence presented before the grand jury was inadequate to support the charge nor supplies the grand jury transcripts supporting his claim there was insufficient evidence supporting the charge. In sum, defendant's bald assertions the State lacked sufficient evidence supporting the charge are insufficient to establish a prima facie claim his counsel was ineffective by permitting him to plead guilty to the first-degree maintaining or operating charge. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999).

---

[13] At his plea hearing, defendant acknowledged receiving complete discovery from the State, which the State indicates included thousands of pages of recorded intercepted phone calls with defendant. Defendant's verified petitions and certification make no specific reference to the discovery, and he does not supply the discovery materials, or address their contents, in support of his bald assertion the State lacked evidence establishing the continuity of his admitted maintenance of a CDS production facility at his residence.

Defendant also suggests he had a defense to the first-degree drug charge because he possessed the heroin for his own personal use. In his certification, defendant states he told plea counsel the CDS in his residence was for his "personal use." He further asserts he told counsel he used CDS the day he was arrested, and plea counsel allegedly advised "that this was not relevant information for any of the charges in the indictment."

We are not persuaded by defendant's claim because it is undermined by his testimony at his plea proceeding. He testified he "maintained an operation" at his residence "where [he] actually bagged up heroin for sale," and the CDS and drug packaging materials seized from his residence are consistent with this testimony that he packaged heroin for sale and distribution. Moreover, his self-serving declaration the CDS was for his personal use does not address or refute the reasonable inference that drug packaging materials he admitted were in his home are consistent with his admission that he maintained a CDS repackaging and sale operation at his residence.

In any event, defendant's claim that the CDS found in his residence was for personal use, even if accepted as true, does not establish a prima facie claim his counsel was ineffective by failing to assert a personal use defense to the first-degree maintaining or operating charge. See generally State v. Wilson, 421 N.J.

29

Super. 301, 307-08 (App. Div. 2011) (explaining the personal use exception set forth in N.J.S.A. 2C:35-2's definition of "manufacture" to offenses charged under N.J.S.A. 2C:35-5). That is because defendant failed to sustain his burden of presenting any evidence establishing that but for his counsel's alleged error in failing to raise the defense—which would have required that defendant testify at trial—it would have been rational for defendant to reject the plea offer and proceed to trial. See Maldon, 422 N.J. Super. at 486. Defendant's failure to address or sustain his burden under the prejudice prong of the Strickland standard requires rejection of his claim his counsel was ineffective by failing to raise the personal use defense. Strickland, 466 U.S. at 700; Nash, 212 N.J. at 542.

Defendant also contends he is entitled to PCR because his plea colloquy was insufficient. We reject the claim because defendant moved before the trial court to withdraw his plea, his motion was denied, and, although defendant appealed from his conviction and sentence, he withdrew his appeal. Thus, the claim is barred because the factual predicate for the claim was known to defendant when his direct appeal was filed but the claim was not prosecuted in the direct appeal, which defendant withdrew. See R. 3:22-4(a); see also State v. Bey, 161 N.J. 233, 276-77 (1999) (finding a defendant's PCR claim he was

denied the right to allocution was barred by Rule 3:22-4 because the denial of the right of allocution was apparent from the record and the defendant reasonably could have, but did not, raise the claim on direct appeal).

Additionally, "Rule 3:9-2 and our jurisprudence do not permit a court to accept a guilty plea unless the defendant provides a factual basis establishing that he [or she] is guilty of the offense." State v. Tate, 220 N.J. 393, 397 (2015). "The factual basis for a guilty plea must . . . include defendant's admission of guilt of the crime or the acknowledgement of facts constituting the essential elements of the crime." State v. Sainz, 107 N.J. 283, 293 (1987). Although "trial courts need not follow a 'prescribed or artificial ritual' when entering a defendant's guilty plea," State v. Gregory, 220 N.J. 413, 420 (2015) (quoting State v. Campfield, 213 N.J. 218, 231 (2013)), "our law requires that each element of the offense be addressed in the plea colloquy," Campfield, 213 N.J. at 231.

There are three elements of the crime of maintaining or operating a CDS production facility: "maintain[ing] or operat[ing] any premises, place or facility"; using the premises, place, or facility to manufacture CDS; and acting knowingly. N.J.S.A. 2C:35-4; see also Model Jury Charges (Criminal), "Maintaining or Operating a Controlled Dangerous Substance Production

Facility (N.J.S.A. 2C:35-4)" (rev. Dec. 11, 2000). In our view, defendant's plea colloquy adequately addressed each element of the offense.

Defendant testified during his plea that he "maintained an operation" "at [his] . . . residence" that manufactured CDS by "bagg[ing] up heroin for sale." As the Supreme Court explained in Kittrell, "maintain" means "to preserve in: carry on: keep up: continue." 145 N.J. at 122 (citation omitted). Thus, defendant's testimony he "maintained" an operation at his residence where he packaged and sold heroin constituted an admission that he carried on, kept up, or continued the operation. Based on defendant's admissions he "maintained an operation" for bagging and selling heroin and the identified CDS and CDS packaging materials were found at his residence, it may be reasonably inferred he "intended to operate the manufacturing facility on more than one occasion." Ibid. Defendant's plea testimony provided an adequate factual basis establishing there was a continuity of his drug manufacturing operation sufficient to support a conviction under N.J.S.A. 2C:35-4. See ibid. It can also be inferred from defendant's testimony that he acted knowingly because he admitted his operation consisted of bagging heroin for the purpose selling it.

In sum, we are satisfied that even if defendant's claim was not barred under Rule 3:22-4(a), it would otherwise fail because there was a sufficient

factual basis supporting his plea to the maintaining or operating charge under N.J.S.A. 2C:35-4. Defendant therefore failed to make a prima facie showing his counsel's performance was deficient under Strickland's first prong by allowing defendant to plead guilty to an offense in the absence of an adequate factual basis. See Strickland, 466 U.S. at 687-88.

C.

Defendant argues defense counsel was ineffective because he agreed to forfeit $2,747 seized from defendant's home even though defendant obtained the money through lawful employment. We find defendant's argument is moot because the State filed a civil action against the $2,747 it sought to be forfeited, see N.J.S.A. 2C:64-3(a); defendant and his girlfriend were notified of the action but never filed an answer, id. at -3(c), -3(e); and, consequently, the court properly entered an August 8, 2013 default judgment and order to forfeit the money, State v. Melendez, 240 N.J. 268, 280 (2020) (observing if a defendant does not timely file an answer, "the property is forfeited" (citing N.J.S.A. 2C:64-3(e))). In other words, the order to forfeit the $2,747, entered three years before defendant accepted the State's agreement and pleaded guilty, makes any argument that plea counsel was ineffective for agreeing to the forfeiture of the $2,747 moot.

33

For each of the foregoing reasons, we reverse and remand for the court to conduct an evidentiary hearing to determine if plea counsel was ineffective by failing to file a motion to suppress. We affirm the court's rejection of defendant's claim his counsel was ineffective by permitting him to plead guilty to first-degree maintaining or operating a CDS production facility, N.J.S.A. 2C:35-4. We further reject as moot defendant's claim his counsel was ineffective by permitting him to agree to the forfeiture of the $2,747 recovered during the August 30, 2012 search of defendant's residence.

Affirmed in part, reversed in part, and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1390-19